WALTER M. ELSWICK, Judge.
From the evidence submitted it appears that on the night of September 29, 1941, the claimant, Lon E. Upton, while walking on the Ford Run road in Barbour county, West Virginia, stepped off the upper edge of a bridge or culvert spanning a stream known as Ford Run, and fell into the bed of the stream. The stream bed consisted of a rock bottom and the stream was practically dry at the time. Claimant fell about seven and one-half feet from the top of the bridge covering to the stream bottom.
*135 It further appears from the evidence that when this bridge or culvert structure was first built that there was a side wall or curb extending up about 16 to 18 inches on each side. This bridge was originally constructed by the county court of Barbour county, West Virginia. After the state road commission took charge of the road under the act of 1933 a fill was made by filling in between these curb walls leaving the sides of the bridge or culvert leveled off with the traveled portion of the structure (record p.p. 79, 80). The bridge or culvert was built on a skew with 28 V2 feet between head walls, that being the length of the structure inside the head walls. (Record p. 81). It was placed a few feet up stream out of alignment with the road and there is a curve in the roadway where the bridge or culvert crossed the stream. (Record p.p. 11, 83). The opening under the culvert was five feet wide by five feet high. The bridge or culvert in question was about 350 to 400 feet from the intersection of said Ford Run road and the Morgantown or Beverly pike.. Claimant resided about 300 yards from the bridge site and had traveled over the same a number of times in the daytime.
On the night in question claimant left his home at about eight to eight-thirty in the evening and went to the home of Guy House who resided on the bank of the road about 100 feet straight up from the road. With the path leading from the road to the house of Guy House on which claimant traveled it was a distance of about 175 to 200 feet. It was necessary for claimant to travel over the bridge or culvert to go to and from the home of Guy House. (Record p. 15). Claimant had gone to employ House to cut his com. When he left home it was beginning to get dark. While at the home of House, it began to rain and continued to rain after he started to return to his home about ten o’clock in the evening. (Record p. 16). By that time it was so dark claimant could not see the road. The rainwater had overflowed a small culvert above the bridge and this overflow of water had washed cinders and gravel on the pavement of the road between the House residence and the bridge in question (record p. 17). *136 From the end of the said path at the road it was a distance of about 25 feet to the bridge (record p. 19).
Claimant had no light and had followed the path leading from Guy House’s residence down the road and then proceeded down the road to the bridge and while on the bridge couldn’t see either the bridge or the road. Trees were standing on the road right of way opposite the bridge. He then thought he was too far to the right and stepped to his left off into the stream bed. We find from the evidence that claimant was taking all reasonable and necessary precautions that his duties as a traveler on the road in question required of him.
During the hearing the respondent offered testimony to the effect that the structure in question was classified by the road commission as a culvert and not a bridge and apparently relied upon this as a defense to the claim filed. From this testimony it would appear that a bridge is classified as a structure across a stream with the floor flush with the roadbed, and a culvert is built lower down with a fill on top of it to bring it up to level with the roadbed. From all the evidence in this case we are of the opinion that regardless of what the structure and roadbed is called the structure, whether it be a bridge or a Culvert, was dangerous and such as would likely be the cause of the mishap in question. We are of the opinion that after the filling in of the curbs or side wall1 of the structure as originally made, that a curbing, railing or some other device should have been erected as a warning or a protection to pedestrians traveling as claimant found himself in this case. This was the duty of the state road commission when repairing or taking over the road under the act of 1933. See claim no. 31, Hershberger v. Road Commission, 1 Ct. Claims (W. Va.) 52.
As a result of the fall claimant sustained a broken leg and arm. He was confined at the Davis Memorial hospital at Elkins, West Virginia, for a period of four months and two days before his leg was placed in a cast, and two weeks after *137 the cast was set. He later remained in said hospital for a period of 13 days (record p.p. 24, 25). He was still using crutches at the time of the hearing, and his leg where broken has abscessed and is still a running sore. Pieces of bone have worked out of the abscessed spot. Claimant has been advised by the attending physicians of said hospital that they believe it best now to amputate his leg. (Record p.p. 25, 26). Claimant has apparently suffered considerable pain and will no doubt be unable to do any work for quite some time. He had worked on the farm and in the coal mines. He had no skilled trade and received very little education, not having completed more than the second or third grade when leaving school.
The statement of Dr. Benjamin I. Golden who attended claimant filed in the case as an exhibit, and under an agreed stipulation by counsel for claimant and the assistant to the attorney general for the state, is as follows:
“The above patient was admitted to the Davis Memorial hospital for the first time on September 29th, 1941. On admission, he was suffering from a severely lacerated lower lip; fracture of the left wrist; laceration of the left thumb; compound fracture involving the distal! one-third of the left femur and knee joint, with approximately one inch of the shaft of the femur protruding through the skin. The fractured fragments showed marked comminution.
“The patient stated that the cause of this accident was due to falling from a bridge while he was enroute home. He stated it was very dark, the bridge had no side rails, and he fell off of it.
“Following the injury, massive infection developed and at the present time, he has an active osteomyelitis. On our examination a month ago, we recommended amputation at the mid-thigh. The condition from which he is now suffering is entirely the result of the accident. He has been admitted to the hospital repeatedly since the original admission because of localized abscess formation and on three or more occasions we have operated in an effort to clean up the infection, and have failed.”
*138 From all the evidence in the case we are of the opinion that the condition of the bridge was such as: would create a liability and justify an award, and from all the evidence we are of an opinion that an award of fifteen hundred dollars ($1500.00) would be fair and just. An order will be so entered by a majority of the court, accordingly.
Judge Bland dissents and will file an opinion setting forth his reasons.